**CITY NATIONAL BANK & TRUST CO, Trustee v SWAIN, et**

Ohio Appeals, 2nd Dist, Franklin Co

No 2871. Decided March 21, 1939

Gumble & Gumble. Columbus, John E. Sater and Kenneth L. Sater, Columbus, for defendants-appellees.

Pomerene & Boulger, Columbus, for plaintiff-appellant.

## OPINION

### By GEIGER, J.

This case is before this Court on appeal on questions of law from the decision of the Court of Common Pleas of Franklin County. The pleadings are voluminous. The petition as a first cause of action states that on the 8th day of January, 1920, Sarah E. Tuller and Charles E. Tuller, as trustees under the last will and testament of Ele W. Tuller, by an instrument in writing, demised and leased to John W. Swain, Leonard Mohr, and Curtis C. Williams, as lessees, certain real estate for a period of fourteen years next ensuing from the first day of April, 1925, to be fully completed on the 31st day of March, 1939, and the lessees agreed to pay therefor $115,000.00, payable in certain monthly installments varying for different dates; and further agreed to pay all taxes and assessments levied against the premises during the term. Said lessees agreed to keep the premises in repair and at their own cost to make repairs during the continuance of the lease, repairs made necessary by fire or unavoidable accident excepted. Certain other provisions of the lease are recited.

It is alleged that on the first day of April, 1922, lessees assigned said lease, together with a prior lease held by the lessees, to the defendant Edwin F. Kraus, called assignee, to hold the same from April 1st, 1922, for the residue of the term. Lessors consented to said assignment, but upon express condition therein recited, which will be noted later. Sarah E. Tuller and Charles E. Tuller are both dead and the City National Bank has been appointed as trustee.

It is averred that said lessees and said assigns are in default for rentals in the sum of $2333.31, and have permitted taxes to accumulate in the sum of $3830.86, and that there is due plaintiff for unpaid rentals already in default and unpaid taxes $6163.37; that a part of said rentals and all of the taxes have been in default for a period of 90 days, and that notice has been given of such default, and a demand made from the lessee for the payment thereof, and it is alleged that the plaintiff is entitled to recover said sum.

As a second cause of action it is alleged that the lessee and assignee have declared their abandonment and repudiation of said lease and their refusal to pay any further rentals or taxes, and that plaintiff has refused to accept the abandonment and surrender of said lease; that lessees in adapting the premises to the operation of a moving picture show have torn out certain portions of the walls requiring the expenditure of $5000.00 to restore as they were obligated to do by the terms of the lease.

It is alleged that installments of the total agreed rentals stipulated which will become due hereafter by the terms of the lease, which installments the lessees and assignees agree to pay, would amount to $45,666.66; that due to the existing business conditions plaintiffs will be unable to rent the property for a sum in excess of $600.00 per month, and from said sum will be obligated to pay taxes in the amount of $2160.00 a year. It is alleged that by reason of the repudiation of said lease by the lessees and assignee the plaintiff has been damaged in the sum of $26,546.66 in addition to the amount due as set out.

In the third cause or action it is alleged that plaintiff has offered to make the necessary expenditures to enable it to lease the premises to a new tenant

and thereby minimize the loss on condition that defendants assent thereto and agree that such act shall not be considered as an assent to and surrender of the lease or in any way relieve the defendants, but shall only be considered as an effort to minimize loss. A receiver was requested and was afterwards appointed.

Plaintiff prays judgment against John W. Swain, Leonard Mohr, Curtis C. Williams and Edwin F. Kraus in the sum of $32,710.00 with interest.

A joint answer of the defendants, Swain, Mohr and Williams, was filed and on motion ordered amended and an amended and a second amended joint answer were filed with leave to amend their second amended joint answer at bar.

The docket and journal entries disclose an overplus of second amended joint answers, but we will assume that the last one filed on June 22, 1936, is the answer upon which they reply. By such answer they admit certain allegations including the execution of the lease, the assignment thereof to Kraus and the consent of the lessor; denying all other allegations.

For a second defense to the first cause of action they make certain admissions and allege that after the assignment of the lease Kraus entered upon the premises and paid the rentals and that on April 24, 1930, the plaintiff, with the consent of Kraus and with the intent of both parties to annul the obligations of defendants under the lease, substituted him as its sole and immediate tenant and continuously thereafter recognized him as such and released the answering defendant. For a third defense to the first cause of action they aver that on April 24, 1930. the plaintiff and Kraus mutually consented to abandon and surrender the lease of January 8, 1920, and entered into a new and different substituted lease, and that plaintiff as lessor and Kraus as lessee complied with the provisions of said new lease.

As a 4th defense to the first cause of action it is alleged that if the first, second, sec-ond and third defenses be not sustained, that the lease granted to them on January 8, 1920, had certain provisions in reference to fire losses, and that when lessee assigned the lease to Kraus he became primarily liable for the payment of the rents and the defendants became merely sureties therefor, and that they were wholly released for the reason that without their knowledge or consent plaintiffs and Kraus made material and prejudicial alterations in the said lease in relation to the fire hazards, the restoration of burned property and other matters set out in said answer, including the obligation upon the part of Kraus to carry public liability insurance in the amount of $20,000.00.

As a first, second, third and fourth defense to plaintiff's second cause of action they adopt their fourth defense to the plaintiff's first cause of action. As a reply plaintiff admits that the lease of January 8, 1920, provided that lessee should pay rents except if the premises shall be destroyed by fire; admits that the lease was assigned to Kraus but denies that Kraus became primarily liable and denies that the other defendants became mere sureties for Kraus.

A jury was waived and the Court found upon the pleadings and agreed statement of facts in favor of the defendants, John W. Swain, Leonard Mohr and Curtis C. Williams. A motion for new trial was filed and overruled and the defendants dismissed. Notice of appeal was filed on questions of law.

The transcript of the docket and journal entries is overburdened with excess papers and briefs and decisions, but out of the mass we have endeavored to extract that which is of importance.

A bill of exceptions is filed in which 33 pages are taken up with statements of counsel on behalf of plaintiffs and defendants, which are not properly a part of the bill of exceptions, but are helpful to us. Beginning on page 34 there is an agreed statement of facts which is in the main taken up by copies of the leases in question, the last pages

however, being devoted to oral examination and argument of counsel.

The questions presented for the determination of this Court are largely incident to the leases exhibited. The important question is to determine whether or not the defendants, other than Kraus, are liable for the rent, taxes and repairs as stipulated in the original lease of the 3th of January, 1920. It is claimed by plaintiff that the obligation of this lease is still in full force and effect so far as the defendants are concerned and the contrary claim is asserted that by reason of the matters set up in the answer the defendants are no longer liable under said lease and that as a matter of fact the lease has been abrogated by plaintiffs and that Kraus was substituted as the sole lessee.

The several claims of the parties are earnestly asserted and the position of each is claimed to be supported by the authorities cited. We think that much that has been said in the briefs may not be apropos to the real issues in this case. Before we can properly appreciate the legal significance of the action of the parties in reference to this property we must carefully analyze the several leases and their alleged modification. This can not be done satisfactorily without an opinion that may seem to be burdensome in length.

AGREED STATEMENT OF FACTS

It is agreed that on the 8th day of January, 1920, Sarah E. Tuller and Charles Tuller, as trustees, entered into a contract of lease with Swain, Mohr and Williams, jointly, as lessees.

Lease of Jan. 8, 1920.

It is recited in this lease that Tuller by an instrument dated the 27th of April, 1914, leased to the parties the premises for a term of ten years commencing on the 1st day of April, 1915, to be completed on the 31st day of March, 1925, and that the parties have negotiated for an extension thereof for a term of fourteen years next after the termination of the present lease. The term provided is for and during the full term of fourteen years next ensuing from the first day of April, 1925, to be completed on the 31st day of March, 1939, for $115,000.00 payable monthly as provided. It is provided that if the lessees shall assign the lease or sublet the premises or any part thereof without the written consent of the lessors except in the event that the lessees shall be unable to operate the moving picture show in said building, in which event the lessees may assign the lease for any legitimate purpose, or if the lessees shall fail to perform any of the terms of the lease or shall assign or sublet the premises contrary to any provision of the lease the lessors may re-enter and thereupon the lease and everything therein contained on said lessors' behalf shall cease and terminate. It is provided that the lessees shall pay the rents except said premises shall be destroyed or rendered untenantable by fire, that they will not suffer any waste, that they will not assign the lease without written consent and that at the end of the term they will deliver the premises in as good order and condition, reasonable wear and tear and damage by fire excepted, as they now are or may be put by said lessee, and that they will restore the building on the ground floor so as to make the same suitable for mercantile purposes; that at their own cost they will make improvements and alterations that may be necessary during the continuance of the lease, repairs and improvements made necessary by fire or unavoidable casualty excepted. No alteration or improvement shall impair the strength of the building as it remains at the time of the execution of the lease. In case said building is totally destroyed or becomes untenantable by fire and the same is re-built during the continuance of the lease, the said lessees upon the rebuilding of said building shall have the first option of re-leasing said premises upon such terms as may be agreed upon at that time, provided said building shall be completed after the expiration of the term for which this lease is executed. Lessees agree to pay taxes and assessments and other public

charges and shall hold lessors free from any debts growing out of the indenture; that lessees shall pay all premiums for any excess insurance caused by the use of said room for the business of moving picture shows, and hold the lessors harmless from any action resulting from the construction or operation of the moving picture show; lessees shall have the privilege to remove improvements designed for the business of a picture show.

## COMMENT

This lease indicates that while it was made in 1920, it was to provide for a term of 14 years beginning at the termination of a prior lease which did not expire until the 31st of March, 1925.

The covenants in respect to fire and unavoidable casualty may be specially noted.

### Assignment of Leases

It is agreed that on the 1st of April, 1922, Swain, et al., assigned to Edwin F. Kraus, their interest as lessees in and to the lease of January 8, 1920. This assignment provided that Swain, et al., in consideration of one dollar paid by Edwin F. Kraus would sell, assign, transfer and set over to him a certain instrument bearing date of April 27, 1914, executed to said Swain, et al., by Ele W. Tuller as lessor to the premises described, and also a certain instrument dated January 8, 1920, executed to Swain, et al.. by the trustees of Ele W. Tuller, to have and to hold the same from the 1st day of April, 1922, during the residue of the respective terms of said leases subject to all the conditions and covenants in said leases except the right to assign the said leases and to sublet the premises as set forth in the consent of lessors. Kraus assumes and agrees to pay all rents due from and after the first of April, 1922, and to keep and perform all covenants of said leases on the part of lessees to be kept and performed and to save Swain, et al., harmless under either of said leases.

### Consent to Assignment

The trustees consent to the assignment to Edwin F. Kraus, on the express condition that assignors, John W. Swain, Leonard Mohr, and Curtis C. Williams, each remain liable for the prompt payment of the rents and for the performance of all covenants and conditions to be paid and performed by the said lessees under said lease, it being understood that if Kraus shall be in default for a period of 90 days that lessors shall notify Swain, et al., in writing of default, and thereupon all the rights and interests assigned by them shall be forfeited by Edwin F. Kraus and shall revert to said Swain, et al., who will in that event carry out and perform the agreement of said Kraus as to payment of taxes and assessments and also upon the further condition that Kraus shall pay all taxes which may be levied or assessed against the premises during the term or said leases. The lessors agreed that without their consent Kraus shall have the right of subletting and of assigning the leases. It is understood that the intent of the parties is that the rental stipulated in said leases shall be net to lessors, and that with the exception of the right to assign, none of the terms of said leases shall be waived or changed.

### Lease of June 9, 1926

On the 9th of June, 1926, Tuller, surviving trustee, as lessor, entered into a contract of lease with Kraus which provides that Charles W. Tuller as surviving trustee, under the will of Ele W. Tuller, known as lessor, and Edwin F. Kraus, known as lessee, in consideration of covenants to be performed by the lessee, does assign the premises for the term of five years next from the first day of April, 1939, to be completed on the 31st day of March, 1944, for the sum of $74,000.00, payable as therein provided. It is provided that if the lessees shall fail to perform any of the terms of the lease it shall be lawful for the lessor to re-enter and thereupon the lease and everything therein contained on said lessor's behalf to be done shall cease and be void. Lessors agree that Kraus shall have the right of subletting. No alterations shall impair the strength or construction of the build-

ing as it remains at the time of the execution of the lease.

It is agreed that the lessees shall pay the rents except said premises shall be destroyed or rendered untenantable by fire, that he will not suffer waste and that at the end of the term he will deliver the premises in good condition, reasonable wear and tear and damage by fire excepted, as they are now or may be put by lessee; and further will restore building on the first or ground floor so as to make the same suitable for mercantile purposes; that he shall at his own cost make repairs and improvements and alterations, repairs and improvements necessary by fire excepted. In case said building is totally destroyed or becomes untenantable by fire or unavoidable casualty and the same is rebuilt during the continuance of the lease, the lessee, upon the rebuilding shall have first option of re-leasing said premises upon the terms that may be agreed upon provided said building shall be completed after the expiration of the term for which the lease is executed. Lessee agrees to pay taxes and public charges and hold the lessor free from all damages growing out of the indenture. He agrees to pay all the premiums for any excess insurance, and hold the lessor harmless for damages arising out of the construction or operation of a moving picture show.

### COMMENT

The conditions of this lease are identical with that of the first day of April, 1922, with the exception of the term payment.

### Lease Modification and Extension

It is agreed that on the 24th of April, 1930, the bank as successor trustee, entered into a contract entitled, "Lease Modification and Extension" with Edwin F. Kraus. The provisions of this document are the basis of the controversy between the parties and we shall therefore note them with some detail. The lease modification and extension provides that whereas on the 8th day of January, 1920, Sarah Tuller, et al., as trustees leased to Swain, et al., the premises known as 77 North High Street

for a fourteen year term beginning on April 1st, 1925, and to be completed on the 31st day of March, 1939, and whereas on April 1st, 1922, an assignment of said lease was made by Swain, et al., to Kraus to which assignment consent is added by the trustees the said Kraus joining in said assignment and agreeing to keep all the covenants, and whereas on the 9th of June, 1926, Tuller, surviving trustee, leased to Kraus the same premises for a term of five years beginning on the first day of April, 1939, and ending on the 31st day of March, 1944; said lease also containing the privilege of subletting any part or assigning said lease.

The lease further provides:

"Inasmuch as said Charles E. Tuller, the remaining trustee, granted a new term of five years to said Edwin F. Kraus, it was undoubtedly the intention of said trustee that said lessee shall remain in undisputed possession of said premises through the terms of both leases, notwithstanding fire or other casualty,

"Now, therefore, the said Edwin F. Kraus desiring a lease for a further term until the 31st day of March 1951, and desiring to avoid the complications of a somewhat indefinite fire clause, hereby agrees that during the term of the lease first written, during the second term of five years given by the first remaining trustee and during the additional term herein provided for, that he will at his own cost and expense insure and keep insured against loss by fire and tornado the buildings now on or hereafter put on said premises in the amount of $20,000.00."

Said insurance to be payable to the City National Bank as trustee and all money received under said insurance shall be held and dispensed by said trustee.

It shall be the duty of the lessee to give notice of loss and on failure the trustee may do so. All insurance money received by the trustee shall be paid out to said lessee for the purpose of re-

pairing the premises to their former condition. In case of partial loss or for re-building in case of complete destruction should the insurance money be insufficient to repair or restore the lessee shall furnish additional money necessary for that purpose. When such repairs or restoration have been fully completed any remaining money shall be paid to the lessee.

In the event of failure on the part of lessee to repair or rebuild, such repairing or rebuilding may be done by any leasehold mortgagee who shall have notified the lessor of their leasehold mortgage and in such event said mortgagee shall be entitled to use for that purpose any insurance money as the lessee might have done. Upon the failure of the lessee or mortgagee to repair or reconstruct within a reasonable time the amount of insurance money deposited with the trustee shall be forfeited to the lessor and it shall receive the insurance for all liquidated damages for such default. And thereupon the lease shall be terminated at the option of the lessor. Said lessee agrees with lessor that lessee shall, until the expiration of the lease first written, the second term of years given by the last remaining trustee and the additional term of seven years provided for, keep and maintain the building now on the premises or those which may hereafter be erected, in good repair, **whether destroyed by fire or otherwise.**

Said lessee shall at the termination of the lease, whether by expiration of the terms, including extension or by forfeiture, replace certain walls.

It is agreed that no partial or complete destruction by fire or other casualty of the building now on or hereafter situated on said premises shall in any way affect the payment of the rentals provided for in the lease first written, the lease for five years given by the last remaining trustee, or the extension of the lease herein provided for or the validity of said lease. Lessee also agrees to carry public liability insurance in the amount of $20,000.00 in the

name of the lessee or a sub-lessee and for the benefit of lessor. It is provided that inasmuch as the former leases gave only five days notice to pay the rent and the lessees and sub-lessees are expecting to invest a very considerable amount of money in repairs and alterations, it is agreed by lessor that he will give the lessee ten days notice before any cancellation of lease for nonpayment of rent and thirty days notice setting forth the ground of forfeiture before any attempted cancellation for any other cause than nonpayment of rent, during which time lessee shall have the right to remove the ground of forfeiture.

It is agreed that the lease expiring March 31, 1944, shall be extended to the 31st day of March, 1951, at a rental of $16,000.00 per year for each year of said extended period. And that lessee shall pay all taxes; that lessee shall have the right of cancelling said extension of lease as of June 30, 1944, upon having given the lessor at least one year's written notice of his intention to so exercise said cancellation privilege. The lessee shall have the right of assigning the lease after June 30, 1944, to a party mentioned, provided said assignee assumes all obligations under the lease and modification of lease and extension agreement, and further that the assignor or assignee give bond as a guaranty that at the expiration of the lease the lessee will restore the building to a rentable condition as a separate unit, and in the event the lessee refuses to do so the trustee may sell the bonds and apply the proceeds to the cost of restoration. In the event the lease is so assigned the assignor shall be released from all obligation under said lease except to restore the building so that it will be rentable. All terms and agreements in both leases shall remain the same in the herein provided for extension except as specifically modified.

A rather broad right is given to the assignee Kraus as found on page 55 of the record, "to alter, reconstruct, remodel, change, to rebuild or build and construct any building or buildings on said premises at any time and in such

way or manner as he may think proper, but not so as to impair or diminish the value of said premises as a whole." This is a right not given by the original lease and might have been availed of by Kraus to completely alter the structures that were on the leased premises in 1920. The lease states, P. 56, R., "that the lessee and sublessee are expecting to invest a very considerable amount in repairs and alterations." We assume these were not carried into effect as they were not pleaded. Both the leesee and sublessee are mentioned as intending to make the alterations.

It is further agreed that Kraus entered into possession by assignment of the lease by defendants, Swain, et al., and that Kraus continued to occupy the premises until the 15th day of November, 1933, at which time he ceased to pay rent or taxes, and that on or about the 14th day of December, 1933, the plaintiff addressed a communication to the defendant which is set out and is in substance as follows: Statement as to the execution of the lease and its period and rental and as to the payment of taxes and the fact that it was not assignable without the written consent, the fact that with the consent of the lessor the parties assigned the lease to Kraus, that this consent was given under consideration that Swain, et al., should remain liable for the payment of rents and the performance of the covenants. It notified parties that Kraus was in default for payment of the rent for the month of November and also for a considerable amount of taxes. The statement is made that "the estate is compelled to look to you for payment of rent now in default and for all future installments"; that Kraus advises that he can no longer carry the lease and desires to surrender it. The following statement is made:

"Of course the estate can not enter into any agreement with him that would in any way affect your rights or obligations under the lease. Anything in this line would have to be by full consent and approval of all three parties involved, namely, yourself as orig-

inal lessees, Mr. Kraus as assignee of the lease and the estate of Mr. Tuller as lessor."

A conference is suggested to see whether or not an amicable adjustment can be made; and it is further agreed that pursuant to the terms of the instrument designated "Lease Modification and Extension" under the date of April 24, 1930, that Edwin F. Kraus complied with all the provisions in said instrument contained relating to insurance. Oral testimony was introduced, none of which seems to relate to the question in issue.

After the cause was heard an entry was made to the effect that the Court finds upon the issues joined between plaintiffs and defendants in favor of the defendants. Motion for new trial was filed and overruled and notice of appeal given on questions of law. The Court below in his opinion of September 23, 1927, after stating the facts, points out that the ultimate question is whether or not Swain, Williams and Mohr are released from the obligations of the lease by reason of the provisions contained in the lease modification and extension of 1930 between lessor and Kraus in which it was provided that Kraus in the event that the property was destroyed by fire was to rebuild the same; agreeing to take out fire and casualty insurance; agreeing in the event that the buildings were destroyed by fire he would continue to pay rent. The court says:

"In other words, do the provisions of the extension lease of 1930 entered into by and between the lessor and Kraus have the legal effect of relieving Swain, Mohr and Williams from liability?"

The Court states that from the facts it is reasonable to infer that plaintiff and Kraus in the execution of the seven-year modification and extension lease intended to and did enter into a new contract of lease, which in effect supplanted the Swain lease. Speaking of the modification in reference to fire insur-

ance and obligation to rebuild, the Court says:

"The conditions here imposed upon Kraus clearly indicate the intention to look to Kraus alone and substituted the 'Kraus Lease' for the 'Swain lease'."

The Court observes that the conditions exacted from Kraus were distinct from the conditions imposed in the Swain lease and are incompatible with those provided in said lease. The Court also points out the fact that in the lease modification the plaintiff and Kraus throughout were designated as lessor and lessee, and concludes that the facts and circumstances in the record come clearly within the principles announced in the case of Keeley v Beenblossom, 183 Ia., 851.

## CLAIM OF COUNSEL

The contention of the plaintiff is that the modification of the lease under date of April 24, 1930, does not release the defendants from the payment of the rent for which they obligated themselves in the original lease of 1920, and and its assignment in 1922. It is asserted on behalf of the defendant that when changes are made in a lease that change the terms of it it is a new lease and the old lease is surrendered; that in the original lease the lessors could terminate the lease whenever there was a fire which was a valuable provision of the lease. It was a determinable lease. The modifications have changed it to an absolute lease to expire on the 31st day of March, 1939. It is claimed that when changes are made in a lease that are incompatible with the original lease, then by operation of law the lease is surrendered absolutely. It is urged that if a lease is subject to termination on a certain contingency and that contingency is taken out and certain conditions are substituted in reference to fire and compensation insurance and obligation to rebuild, there is an inconsistency which makes a new lease out of the modification and the extinguishment of the old lease. It is urged that there is a surrender in law because the giving of a new lease necessarily implies a surrender of the old lease for the reason that the lessor can not legally execute the Swain lease during the term of the first and when lessee accepts the second lease unexplained he admits the power of the lessor which he can not legally have without a surrender of the first, and that presumption in law is therefore that a surrender has been made. It is pointed out that a surrender is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by mutual agreement between the parties. This may be either in express words by which the lessee manifests his intention of yielding up his interest or by operation of law when the parties without express surrender do some act which implies that they have both agreed to consider the surrender is made. It is urged that Kraus was in possession as lessee. He made a new lease; and the old lease became extinct.

Many other matters are urged by each counsel in support of the position taken by him.

After the examination of numerous cases we have arrived at some general conclusions which may be stated to the effect that the mere fact that the landlord consents to an assignment of a lease and thereafter receives rent from the assignee will not of itself discharge the original lessee from such liability; unless there is a substitution of the assignee for the original lessee and unless there was a clear intent to make a new contract and to discharge the original lessees from further liability and unless there was an intent to accept a surrender of the original lease the original lessees were not relieved from their liability. If the original tenancy is in full force, the lessee remains liable on the covenants entered into by him. The conduct of the lessor and the assignee of the lessee in order to relieve the lessee of liability must be such as to have created in effect a new lease between the plaintiff and the assignee. An assignment of the term and the acceptance of the

assignee as tenant discharges the lessee from obligations arriving from privity of estate by not from those arising from privity of contract unless there is an agreement by which the new tenacy is created in which event no further liability attaches to the lessee, in the absence of a reservation of such liability. These principles are admitted by counsel for defendant when they state in their brief on page 3,

"If in this case nothing were involved but the lease of January 8, 1920, the assignment thereof to Kraus, and the lease of June 9, 1926, to Kraus, the defendants Swain, Mohr and Williams would be liable."

The same admission is made by Judge Sater in his oral argument before the court below where he admits the existence of the 1920 lease, but in avoidance it is urged that the parties made a new lease which extinguished the original lease and that when they made the new lease they made a new tenant.

On the other hand we may conclude that where a lessee assigns a lease and the lessor recognizes the assignee as his immediate tenant and the lessor and assignee enter into a direct relationship of landlord and tenant the lessee is released from his covenants. This changed relationship may come about by operation of law as where the lessor and assignee enter into an agreement which would violate the covenants of the original lease. If the landlord expressly consents to treat the lease as having been surrendered and enters into a new or substituted lease with the assignee the contract and relation between the original parties is severed and the obligation of the original lessee to pay rents ceases. Such surrender of the first lease may be implied from circumstances. A surrender may be implied from the conduct of the parties, which is called a surrender by operation of law. And if the acts of

the parties would reasonably permit a surrender to be inferred the court would construe their acts as being equivalent to a surrender. Surrender is based upon the doctrine of estoppel and arises where the owner of the premises is a party to an act in conjunction with some act on the part of the tenant, the validity of which the owner is estopped from denying. Where pending the unexpired term of one lease a second is made containing stipulations inconsistent with the former lease, the latter shall prevail, the presumption being that the surrender of the old lease is intended. Of course the execution of a new lease by the parties to the old lease is a surrender of the old lease.

The effect of the surrender is to terminate the relation of landlord and tenant and to put an end to the lease so far as the rights of the party to it are concerned. A surrender is created by operation of the law when the parties to a lease through some act so inconsistent with the subsisting relations of landlord and tenant as to imply that they have both agreed to consider this surrender is made. Any act which will amount to an eviction will estop the landlord and make a formal surrender unnecessary.

It will be readily perceived that many of the foregoing principles apply to actions between the original parties. It is quite manifest that if the lessor and the lessee have a contract of lease and at a subsequent date they enter into a new contract inconsistent with the original that the new contract is the one in force and the old is void because there can not exist at the same time two inconsistent leases between the same parties on the same premises.

We will not undertake to comment in detail upon the many cases cited and commented upon by counsel, but will refer briefly to those Ohio cases which seem to throw light upon our problem. We will, however, state that these cases

and their pertinency can not be appreciated unless there be a careful study for the reason that the facts under discussion may differentiate them from the instant case.

Sutliff v Collins, 15 Oh St 180, holds that where a lease is made for a term of years the contract for rent runs with the land and the assignees of the term are bound for its payment. The contract of the lessee fixes his liability for the whole term; that of the assignee is limited to the rent accruing during the continuance of his interest. The lessor may at his election pursue either or both for payment; it is the duty of the assignee to pay the rent while he enjoys the estate, and the personal liability of the lessee is in the nature of a security as between him and the assignee, and, in the absence of agreement between them the latter is primarily liable.

In Harmony Lodge v White, 30 Oh St 569, it is held that a lessee remains liable on his agreement to pay rent notwithstanding he has assigned his lease with the lessor's assent and the lessor has accepted rent from the assignee. But where the obligation of the lessee to pay rent is only that which is implied by law, his assignment of the lease and surrender of possession to the assignee, with the assent of the lessor, extinguishes the privity of estate between the lessor and the lessee, and the consequent implied liability of the lessee to pay rent. The assent of the lessor to such assignment when nothing to the contrary appears may be implied from his charging rent to the new tenant and accepting payment therefor from him.

This case is of course distinguished from the case at bar by the fact that there was a specific and definite agreement upon the part of the original lessees to be responsible for the rent in the event that the assignee default.

In the case of Taylor v DeBus, 31 Oh St 468, it is held that the lessor may maintain an action against his lessee on an express covenant to pay rent during the term, though the rent accrued after the lessee had assigned all his interest in the leasehold estate and after the lessor had accepted rent from the assignee of the term.

The case which is much commented upon but which seems to us to be of minor importance is that of Washer v Tontar, 128 Oh St 111. It relates to the liability of the maker of a negotiable promissory note.

In the case of Wade v March, 39 Oh Ap 111, it is held that the lessee is not relieved of liability under the laws because lessor extended time to lessee's assignee to complete improvements, which the lease required lessee to erect. That lessee's assignees paid rent did not relieve lessee of liability under lease. Conduct of lessor and lessee's assignee to relieve lessee of liability under lease must create in effect new demise between lessor and assignee.

The above constitute the most pertinent Ohio cases.

A case strongly urged by defendants is that recently announced by the Supreme Court of Massachusetts, Walker v Rednalloh Co., decided in 1938, 13 N. E. (2d Series) p. 394. It is there held that a lessee was not relieved of his obligation under a lease merely by a valid assignment thereof. It is further held that the assignment of the lease with lessor's consent and the assumption of covenants by the assignee and the lessor's collection of rent from the assignee and the procuring by the assignee of surety for his performance, are insufficient either separately or taken together to show a release of the lessee. A release may be established by showing that the lessor accepted surrender of the old lease or that lessor or assignee of lease with the lessor's consent, materially altered obligations under lease without lessee's consent. The intent of the lessor to relieve lessee must be clearly shown. A surrender of lease by operation of law may result from acts of lessor and lessee, such as lessor's entry into agreement with lessee's assignee containing materially different provisions from old lease or amounting to a new lease. A lessee may

be discharged by an agreement between the lessor and assignee which in effect varies lessee's obligation, since lessee after assignment may be considered as surety for assignee's performance. An agreement between lessor and assignee materially varying terms thereof terminate lessee's covenant to pay rent, but variations in the original lease resulting from an agreement between lessor and assignee will not discharge lessee where variations inure to his benefit, even though his liability is increased, since assignee is entitled to the benefit of original lease. Substantial alterations of leased premises by assignee with lessor's consent materially varying obligations of lessee to which he did not consent discharges lessee from its obligations under lease, where alterations were not permitted by lease and did not inure to lessee's benefit.

Another case relied upon is Keeley v Beenblossom, 183 Ia., 861, where it is held that a tenant's obligation to pay rent is not terminated by the naked fact that the tenant, with the consent of the landlord assigns the lease, and the landlord thereafter receives the rent from the assignee; but such result will follow from additional acts of the landlord in exacting from the assignee conditions separate and distinct from those exacted of the former tenant.

In both of these last cited cases the lessee was released because the conditions of the contract subsequently entered into between the lessor and the lessee's assignee imposed additional burdens upon the tenant.

In the first case the major cause for declaring the lessee no longer liable was the material alteration of the property leased.

It will be noted in the case at bar that there is no allegation of an alteration of the premises leased although there seems to have been permission granted to the lessee in the "modification" of the lease. We can readily concede that if the property covered by the original lease was altered substantially by the assignee of the lessee with the lessor's consent

that such alteration would constitute a surrender of the original lease. We must assume, inasmuch as the defendants have not set up the alteration of the building in question, that no such alteration actually took place even though permission were given to the assignee to do so. We do not believe that a permission which was never availed of during the term by the assignee of the lessee would constitute a surrender of the lease. Had the assignee availed himself of this right and the building been so altered that it could not be restored to the possession of the lessee upon the default of the assignee in its original condition, then the lessee might well say that due to the alteration of the property the lease had become void. As above stated, however, this does not seem to be an issue made in this case. See also 16 R. C. L., p. 848, Sec. 348, p. 1157, Sec. 678.

The leases presented in evidence indicate at least one thing; that there were parties wishing to lease this property who were willing to obligate themselves to pay rent for a term beginning many years after the term in existence at the time the new lease was made. When the lease primarily in question was made in 1920 the outstanding lease did not expire until 1925 and the parties agreeing to a contract terminating 14 years from that date, or 19 years beyond the date of the contract. In 1922 the lease with Kraus extended the term until 1939 and the subsequent lease of 1926 extended the term until 1944 and the lease of the 24th of April, 1930, extended the term until the 31st day of March, 1951.

## THE QUESTION

Obviously the real question is whether the modification and extension of the lease under date of April 24, 1930, constituted a surrender and cancellation of the old lease of 1920 and a recognition by the lessor of Kraus as the sole and only lessee, resulting in the release of Swain, Mohr and Williams.

It may be observed that all these parties were in the same business, that of operating a moving picture theater,

that Swain and his associates first entered into a lease in 1914 for a period of ten years from the first of April, 1915. In 1920 this lease was extended in their own name for a period of 14 years after its expiration in 1925. In 1922 the assignment was made to Kraus by Swain and his associates on the definite condition that Swain and his associates remain liable for the prompt payment of the rent and for the performance of all covenants, and that upon default by Kraus all the rights assigned by Swain, et al., shall be forfeited by Kraus and revert to Swain who will in that event carry out and perform the agreement of Kraus as to the payment of taxes and assessments, and that none of the terms or stipulations of the leases shall be waived or changed. This ended the negotiations and transactions with Swain and his associates and Kraus took possession of the property and remained in control until his final default in December of 1933. The crucial document is of course the lease modification and extension dated the 24th of April, 1930, and is the instrument upon which defendants rely as terminating the lease and their responsibility. It is apparent that this was not a new lease between the original parties but simply a new contract between the lessor and an assignee of the original lessee who had taken over the lease expiring in 1939 and had entered into further contractual relations with the lessor extending the period so far as he was concerned until 1951. There is a recitation in this modification to the effect that the terms in reference to fire insurance were not clear and there was a new agreement different from that existing in the original lease as to the rights of the parties in case of partial or total destruction of the premises by fire or other casualties. There can be no quibble about the fact that the new fire conditions were different in the "Modification" of the lease from those that had existed in the original lease. This contract for modification was not made with Swain and his associates and they were not a party to the contract. No fire occurred and no question has been or ever can be raised in reference to the fire clause unless there be a fire between now and the 31st day of March, 1939, less than thirty days from this date. Had a fire occurred after the modification of the contract with Kraus he would have been under obligation to carry out the terms of the modified lease made with him. Had he failed in this and had an attempt been made to collect from Swain and his associates under the modified contract in reference to fire insurance they would have had a perfectly good defense on the ground that they were not parties to that contract, but were parties to the fire provisions in the lease of 1920 and to no other. It was of interest to Kraus and to the lessor to cover the entire period of the extended lease by new and more definite fire contract, but this in no way bound or jeopardized the rights of the defendants under their contract nor did it place any heavier burden upon them than that entered into by their original contract.

No evidence was introduced to support the 2nd and 3rd defenses to the first cause of action which is in substance that the parties agreed that the original lease be abandoned and surrendered, and that Kraus was by agreement substituted for the defendants and defendants released.

We are of the opinion that there was no surrender of the original lease either by agreement or by operation of law; that it remained in full force and effect, imposing upon the original lessees the obligation of their contract to pay the rent and the taxes in the event that their lessee Kraus failed to do so. There was no occasion for the trustees to have further contractual relations with Swain and his associates until the event occurred against which they had secured the protection of a contract. Almost immediately upon the default by Kraus the lessors notified the parties with whom they had a contractual relation of their intention to call upon them to respond in accordance with their contract. They can not avoid this obligation by asserting that

their lease has been surrendered, that there has been a novation or that that they merely stand in the position of sureties. They are responsible under their lease for the term during which they agreed to pay rent.

We have read with interest many of the cases cited by counsel, but not all, and arrive at the conclusion as above stated.

Judgment of the court below reversed. Cause remanded for further proceeding.

HORNBECK, PJ, and BARNES, J, concur.